IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**VERNITA BELL, individually and on behalf of**
**E.A.B., deceased; et al.**                                               **PLAINTIFFS**

**VERSUS**                                           **CIVIL ACTION NO. 5:09cv192KS-MTP**

**TEXACO, INC., et. al.**                                                 **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Reconsider Order Denying Motion to Remand [Doc. # 48] (Mar. 1, 2010) and Memorandum in Support [Doc. #49]. Plaintiffs ask the Court to reconsider its basis for finding that Defendants Estate of W. Joe Brown d/b/a Brown's Auto Parts and Southwest Mississippi Mental Health Foundation were improperly joined and to grant its motion to remand. [Doc. # 12]. FED R. CIV. P. 60(b)(6) allows the Court to reconsider its order for any reason that justifies relief. The Court finds as follows:

### A. The Estate of W. Joe Brown d/b/a Brown's Auto Parts

After considering Plaintiffs' arguments supporting joinder of the Estate of W. Joe Brown d/b/a Brown's Auto Parts in its memorandum supporting remand [Doc. # 13] (Dec. 3, 2009) and Defendants' response [Doc. # 22] (Dec. 17, 2009), this Court concluded that the estate was improperly joined and the Brown's citizenship should not be considered when determining if jurisdiction existed based on diversity of citizenship. The Order denied remand and held that Brown was fraudulently joined because MISS. CODE ANN. § 15-1-25 barred suit.[Doc. # 37] (Feb. 8, 2009). The provision states:

1

> An action or *scire facias* may not be brought against any executor or administrator upon any judgment or other cause of action against his testator or intestate, except within four years after the qualification of such executor or administrator.

MISS. CODE ANN. § 15-1-25. The Court held that the limitations began to run from the original issuance of the letters testamentary on January 22, 1987, but that even if the period ran from the most recent appointment of an administrator, on May 27, 2003, the suit, which was filed on October 16, 2009, would be barred under § 15-1-25. Although this argument was raised by Texaco in its response to Plaintiffs' Motion to Remand [Doc. # 22] (Dec. 17, 2009), Plaintiffs did not file a rebuttal brief challenging the application of this statute, and instead raise new objections for the first time in their Motion to Reconsider now before the Court. [Doc. # 48] (Mar. 1, 2010).

Plaintiffs argue that § 15-1-25 does not apply because the cause of action arose after Brown's death. Plaintiffs rely on an annotation to §15-1-25 which states: "The section [Code 1942, § 725] does not apply to causes of action which accrue after the death of the decedent." MISS. CODE ANN. § 15-1-25, Annot.2, Claims Subject to Bar. Upon review of the cases cited to support this proposition, the Court believes that Plaintiffs have misinterpreted the annotation.

In *Taylor*, for example, the Mississippi Supreme Court held that the provision did not apply in a case seeking payment of funeral expenses from the administrator as these charges arose after the death of the decedent. *Tom E. Taylor Undertaking Co. v. Smith's Estate*, 183 So. 391 (1938). The court stated that the provision "applies alone to obligations incurred by the decedent in his lifetime." *Id.* Funeral expenses are not a judgment or cause of action against the testator or decedent as contemplated by [§ 15-1-25], but an expense of administration. *Id.* The court concluded that an action against the administrator for the unpaid portion of the funeral

expenses could be maintained because the estate was still open, even if more than four years had passed. *Id.*

Likewise in *Bingaman*, a case seeking to enforce an administrator's promise to pay a debt, the Court noted that the limitation only applied "to claims upon which the party had a cause of action at or before his death." *Bingaman v. Robertson*, 3 Cushm. 501, 25 Miss. 501, 1853 WL 2346 at *4 (Miss. Err. & App. 1853). Since the cause of action resulted from the administrator's promise to pay and not the decedent's, the statute of limitations would be regulated by other provisions and would not run from the appointment of the administrator. *Id.*

Finally, in *Sivley*, the final case discussed by the Plaintiffs, a promissory note matured after the death of the decedent. *Sivley v. Summers*, 57 Miss. 712, 1880 WL 4820 (1880). In a suit against the administrator seeking to enforce the note, the court held that the claim was not barred by the statute because "it matured after the death of the testator and maker, and, therefore, was not a cause of the action against him, and, according to repeated decisions, is not affected by the statute cited." *Id.* at *11. In other words, it was the nonpayment by the administrator, not that of the decedent, that were actionable.

The Court finds that the cases in the annotation do not apply in the case at bar. The annotation is simply making the point that if the wrongdoing was attributable to the decedent or occurred during his lifetime, § 15-1-25 applies. If the wrongdoing was attributable to the administrator, it does not. Indeed, the annotation to § 15-1-25 cites *Jones v. Evans*, 156 So.2d 742 (1963), for the proposition that "[t]his section [Code 1942, § 725], and not the one-year period fixed by Code 1942, § 610, governs an action against an estate for decedent's negligence." MISS. CODE ANN. § 15-1-25, Annot. 2, Claims Subject to Bar.

3

Here, the Court affirms its holding that § 15-1-25 applies to the cause of action arising in this case. If the *executor*'s negligence or wrongdoing caused the exposure to the patients and employees, § 15-1-25 may not apply. But the Plaintiffs are contending that the decedent's actions as an agent of Texaco caused the harm. Since Brown's actions have been challenged and not those of his administrator, the court finds that § 15-1-25 applies.

Nor is the Court persuaded that the discovery rule in § 15-1-49 would make § 15-1-25 inapplicable. § 15-1-5-49(2) states: "*In actions for which no other period of limitation is prescribed* and which involve latent injury of disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." § 15-1-49(2)(emphasis added). As the Court determined above, this is not an "action for which no other period of limitation is prescribed," but rather an action to which a limitation based on the appointment of the estate administrator is prescribed. MISS. CODE ANN. § 15-1-25. Therefore, the Court finds that the discovery rule in § 15-1-49 would not apply.

Next, Plaintiffs argue for the first time that the savings clause would toll the statute of limitations for the claims of the minor plaintiffs and the mental health patients that were of "unsound mind" when exposed to the chemicals from the USTs. *See* MISS. CODE ANN. § 15-1-59. This Court disagrees. The purpose of § 15-1-25 is to allow finality following distribution of an estate. The Mississippi Supreme Court has said:

> Having a statute of limitations applicable to causes against estates that is shorter and different from the general statute of limitations is not a violation of the constitution and is in the interests of public policy. The legislature's interest in finality, particularly as to claims against estates, certainly is a legitimate governmental interest and the statute of limitations is a rational means of serving that specific interest.

*Townsend v. Estate of Gilbert*, 616 So.2d 333, 336 (Miss. 1993) (holding that specific statute of

4

limitation for claims against estates over longer general statute of limitation).  To apply the savings clause and allow plaintiffs to bring suit twenty-three years after the Brown's death in 1987 and twenty-two years after the estate was initially closed is contrary to the legislature's intent to provide finality in estate closings.  Instead, the Court interprets § 15-1-25 as an absolute bar to the claims against Brown's estate, and affirms its ruling that the Estate of W. Joe Brown d/b/a Brown's Auto Parts was improperly joined.

In addition to the statutory bar discussed above, the Court notes two other arguments raised by Defendants that were persuasive in the Court's determination that the estate was improperly joined.  First, Plaintiffs did not raise this argument in a timely manner.  Defendants raised a statute of limitations argument in their response to Plaintiffs' motion to remand filed in December of 2009.  Despite the Court allowing plaintiffs additional time to respond, and despite the Court granting Plaintiffs' first motion to reconsider as to the joinder of the Foundation, Plaintiffs failed to raise this issue until this point in the litigation.  As Texaco pointed out in its memorandum, Rule 59(e) "cannot be used to raise arguments which could, and should have been made before the judgment issued."  *Rosenzwig v. Azuri Corp.*, 332 F.3d. 854, 864 (5th Cir. 2003).  Plaintiffs instead have filed this second motion to reconsider and are attempting to get a second bite at the apple.

Second, even were the claims not barred by a statute of limitations, Plaintiffs have no possibility of recovery against Brown or Brown Auto Parts.  Plaintiffs argue that Texaco owned the USTs and that W. Joe Brown is liable as the operator.  Plaintiffs argue: "the fact that . . . W. Joe Brown, as operator of the ChevronTexaco USTs and as owner of the Brown Texaco service station in question, *was the authorized agent of Texaco when the USTs were abandoned in 1976*

5

clearly makes the joinder of his estate proper under Rule 20(a), Mississippi Rules of Civil Procedure." Mem. Supp. Pls.' Mot. Remand 15 [Doc. # 13] (emphasis added). Of course, Defendants provided clear and unrefutted evidence that W. Joe Brown was not an agent of Texaco when the USTs were abandoned. *See* Resp. Mot. to Remand, Ex. 9 (deed of conveyance from W. Joe Brown to his son in 1976); & Ex. 10, (newspaper clipping announcing termination of gas sales at Brown's service station in 1978) [Docs. # 21-10 & 21-11].

W. Joe Brown did not own the land when the USTs were installed, and according to the deeds of conveyance in the record, he transferred the property at issue to his son in 1976, before the station discontinued the sale of gas in 1978. W. Joe Brown, Jr., not his father, was the operator when the station stopped selling gas, when the tanks were abandoned by Texaco, and when the property was sold to the county. Plaintiffs have never presented any evidence to the contrary. In other words. W. Joe Brown was not the owner or operator when the USTs were abandoned, but rather a *prior operator*. At the time Texaco allegedly abandoned the USTs the agency between Texaco and W. Joe Brown, Sr. had ended. His son is not a party to this case. This Court cannot reasonably foresee any possibility of recovery against a former operator of the tanks, particularly in light of the thirty-four intervening years.[1]

---

[1]The Mississippi Supreme Court in *Donald v. Amoco* applied the discovery rule to a case of a current owner against previous owners who illegally dumped radioactive materials, but noted that "it only seems equitable that the discovery exception should apply in the unique facts of the instant case." 735 So.2d 161, 168 (Miss. 1999). However, the Court quoted a case from a Texas federal district court as persuasive:

> Here, this goal [of requiring the timely assertion of claims while the evidence is fresh in the minds of the parties and witnesses] can best be effectuated by finding the plaintiffs' action to be time-barred. Any witnesses with knowledge concerning the deposit of hazardous wastes in the pits between 1904 and 1969 would likely be dead, retired, or of unknown whereabouts. Even if located and alive, a

Tellingly, no other actual or potential negligent acts have been alleged against W. Joe Brown, Sr. other than to allow gasoline on the property. Even under the theories of nuisance, trespass, or strict liability, the plaintiff would be required to show that the "the defendant was responsible for the physical invasion." *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 172 (Miss. 1999) ("Mississippi clearly allows a plaintiff to recover damages to land caused by physical invasion of the plaintiff's land by an agency put in motion by the defendant, even if the defendant has not been negligent."). In 2000, MDEQ discovered and removed the leaking gas tanks and removed approximately 1,211 equivalent gallons of hydrocarbons. *See* Pls.' Mot. to Remand, Ex. K, Remediation Report [Doc. # 12-12]. Plaintiffs have not presented any evidence or even created an inference that the tanks had been leaking gas since before 1976 when W. Joe Brown sold the property, that Brown knew of the leaks and concealed it, or that the leaks and the resulting saturation were "put in motion" by Brown. Indeed, if the tanks were leaking to any significant degree they would have long leaked out over the twenty-four year period. The Mississippi Supreme Court has been reluctant to abandon the principle of *caveat emptor* and hold grantors of land liable for defects without a showing that the grantor created the dangerous condition (i.e., contractors and builders) or that the grantor knew of the condition and concealed

> witness's memory of events that occurred at a minimum twenty-seven years ago would be distorted by the passage of time and could not be considered "fresh." Relevant documents also would likely have been destroyed over the course of the last ninety-two years. Therefore, the events at issue in this case are not just stale, they are rancid. Under these circumstances, applying the discovery rule to preclude the running of limitations is not warranted.

*Donald v. Amoco Prod. Co.*, 735 So.2d 161, 167 (Miss. 1999) (quoting *Jones v. Texaco, Inc*. 945 F. Supp. 1037 (S.D. Tex. 1996). The instant case raises the same problems with availability of records and witnesses as found in *Jones*. Donald is, of course, further distinguishable because the plaintiffs were suing active companies and not an estate twenty-two years after its closing.

it.  *See Stonecipher v. Kornhaus*, 623 So.2d 955, 963 (Miss. 1962) (finding seller not liable for injuries sustained when limb fell because seller did not create dangerous condition and buyer had adequate time to discover decaying condition of tree); *Owens v. Estate of Erwin*, No. 3:95cv1994-D, 1997 WL 160193 at *1 (N.D. Tex. ) (Mar. 31, 1997) (granting summary judgment as to parties who owned gas station between 1962-1978 because leaks were not detected until 1991 and plaintiffs could not establish a duty as a matter of law without evidence that they knew of dangerous condition when they sold it); Robert A. Weems, 5 MISSISSIPPI LAW OF TORTS § 5:28, Liability of Real Estate Vendors  ("[A] vendor who did not actually build the house or otherwise engage in any active negligence may be held liable for failing to disclose a defect in the house of which he had actual or constructive knowledge.").  Finally, Plaintiffs' complaint alleges violations of the Mississippi Underground Storage Act of 1988, but the act was not even in effect until years after Brown sold the station to his son.  *See* MISS. CODE ANN. §49-17-401 *et. seq.*  Simply put, Plaintiffs have not even alleged the bare minimum to demonstrate Brown's responsibility for the leaking USTs.

Plaintiffs point to a $4 million default judgment against Brown Auto Parts arising out of the same leaks to support its contention that recovery against Brown is possible.  *See* Mem. Supp. Mot for Remand at 14-15 [Doc. # 13].   They also point to the pending state case, *Simon et. al. v. Texaco, Inc. et. al.*, in which a different group of plaintiffs have alleged that Brown is liable for the toxic spill.  *Id.*  The Court finds that neither the judgment nor the pending related litigation is proof of a possible basis of recovery.  Therefore, the Court renews its holding that the Estate of W. Joe Brown and Brown Auto Parts were improperly joined parties added solely to defeat diversity jurisdiction.

## B. Southwest Mississippi Mental Health Foundation (SWMHF)

Despite clear evidence presented by SWMHC's attorneys to the contrary, Plaintiffs assert that the Foundation and the Complex are joint venturers and that the Foundation is a proper party and jointly and severally liable. Plaintiffs' only evidence in support of this assertion is the Foundation's non-profit charter statement that its goal is to support the mental health services offered by the Commission by acquiring funds and property. However, the Foundation has clearly established that it did not own, operate, or lease the premises giving rise to the claims at issue and that they did not at any time offer mental health services in that building. The Court has fully addressed this issue, not once, but twice, and declines to address this unsubstantiated argument a third time.

Plaintiffs also complain that the Complex misled them to believe that it was not a state agency. Again, all the evidence on record is to the contrary. Defendants provided information from the both the Complex's website as well as the Mississippi Department of Health's website explaining the formation of mental health commissions throughout the state. *See* Defs.' Resp. Mot. Remand, Exs. B and C [Docs. ## 21-3 and 21-4] (December 17, 2010). Regardless, this allegation is not relevant to whether the Foundation was fraudulently joined. The Court will consider the propriety of adding the Complex as a party when it considers Plaintiffs' separately pending Motion for Leave to File Second Amended Complaint [Doc. # 38].

IT IS, THEREFORE, ORDERED AND ADJUDGED that Plaintiff's Motion to Reconsider [Doc. # 48] is **denied.**

SO ORDERED AND ADJUDGED on this, the 13th day of April, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE