IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

VERNITA BELL, INDIVIDUALLY, AND
ON BEHALF OF E.A.B., DECEASED, ET AL.                    PLAINTIFFS

V.                              CIVIL ACTION NO. 5:09-CV-192-KS-MTP

TEXACO, INC.                                            DEFENDANT

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss [143] for Plaintiffs' failure to comply with the Court's discovery orders. For the reasons outlined below, the motion is granted and the claims of each Plaintiff are dismissed with prejudice.

Before the Court can address the legal arguments surrounding Defendant's motion, it must outline the events leading to this opinion. A full account of the events leading to this opinion requires an inordinate amount of space, but the length of this opinion is overshadowed by the resources that have already been expended due to Plaintiffs' and their counsel's indolence and brazen disregard for the Court's orders and procedural rules.

### I. BACKGROUND

This is a toxic tort case in which over a dozen plaintiffs allege that they were exposed to fumes from abandoned gasoline storage tanks. Plaintiffs allege a variety of injuries, including cognitive disorders, miscarriages, birth defects, and other serious

conditions. On October 13, 2010, Defendant Texaco Inc. served Plaintiffs with interrogatories and requests for production [82, 83]. On December 1, 2010, Defendant filed a Motion to Compel [91], representing to the Court that Plaintiffs had failed to respond to the discovery requests within thirty days.[1] Accordingly, Defendant argued that the Court should compel Plaintiffs to respond, and that Plaintiffs had waived any objections to the interrogatories.[2]

Plaintiffs did not respond to Defendant's first motion to compel, and on December 20, 2010, the Court granted it [93]. The Court ordered each Plaintiff to provide full responses to the interrogatories and requests for production on or before January 4, 2011,[3] but the Court denied Texaco's demand for costs and fees related to the motion.

On January 3, 2011, Plaintiffs filed a Motion for Extension of Time [95] to respond to Defendant's discovery requests. Therein, Plaintiffs stated: "Due to the Christmas holidays and the inability of counsel for the Plaintiffs to confer with all of the individual Plaintiffs, the Plaintiffs will be unable to file their discovery responses on or before the

---

[1]*See* FED. R. CIV. P. 33(b)(2), 34(b)(2)(A).

[2]*See* FED. R. CIV. P. 33(b)(4).

[3]The Court's order contained a typographical error, stating that the discovery response were due on or before January 4, *2010*. Plaintiffs obviously understood the Court's meaning, as they filed a Motion for Extension of Time [95] on January 3, 2011.

2

deadline of January 4, 2011."[4] Defendant opposed the motion, citing Plaintiffs' prior failure to provide discovery response and Defendant's impending expert designation deadline of April 15, 2011 [98]. On January 5, 2011, the Court – via text order – granted Plaintiffs an extension of time to respond to Defendant's discovery requests, ordering Plaintiffs to respond by January 15, 2011. On January 14, 2011, Plaintiffs filed notices that they had served responses to Defendant's discovery requests [100, 101].

On February 1, 2011, Defendant filed its Second Motion to Compel [105]. Therein, Defendant represented that it did not receive any discovery responses until January 20, 2011, despite Plaintiffs' filing notices of service on January 14, 2011. Further, Defendant represented that Plaintiffs only provided interrogatory responses. While Plaintiff's counsel represented in a cover letter that responses to Defendant's requests for production had been sent separately, Defendant never received them.[5] Additionally, the purported interrogatory responses had not been signed or verified, and Defendant identified various

_____

[4] Prior to filing the motion for an extension, Plaintiffs' counsel had represented to Defendant's counsel that he was not even aware that the Court had entered an order granting the motion to compel [98-1].

[5] Regardless of whether Plaintiffs actually mailed Defendant responses to the requests for production, it is undisputed that Plaintiffs did not provide Defendant with an additional copy once they were aware that Defendant never received them. Defendant did not receive responses to its requests for production until after the Court's hearing on April 21, 2011.

other deficiencies in the interrogatory responses.[6]

Plaintiffs responded to the motion on February 7, 2011 [106]. Plaintiffs represented that Defendant had received Plaintiffs' responses to the requests for production, which were forwarded on January 14, 2011. They also provided specific responses to the alleged deficiencies in their interrogatory responses.[7] Plaintiff failed to address the fact that the

---

[6]The following non-exhaustive list of deficiencies is a fair representation of the whole: 1) some Plaintiffs failed to provide their home address; 2) some Plaintiffs failed to provide the adult mother's and minor child's date of birth; 3) some Plaintiffs failed to provide the dates on which they sought medical treatment related to injuries allegedly caused by Defendant; 4) some Plaintiffs failed to identify the medical providers and/or facilities at which they sought treatment for injuries allegedly caused by Defendants; 5) in response to an interrogatory requesting the identities of persons with discoverable knowledge of matters related to the case, some Plaintiffs merely objected that the question was ambiguous and overly broad, while others objected but provided an answer nonetheless; 6) some plaintiffs failed to provide any information regarding the date, time, and duration of their exposure to the harmful substance which allegedly caused their injuries; 7) some of the plaintiffs failed to provide any information whatsoever regarding any medical conditions and physical or mental symptoms from which they suffer as a result of their alleged exposure; 8) those Plaintiffs who provided information regarding their medical conditions failed to provide the dates on which they discovered the conditions and/or symptoms; 9) none of the Plaintiffs identified the specific condition, injury, or illness which they allege was caused by Defendant; 10) none of the Plaintiffs identified any medical expenses related to the injuries allegedly caused by Defendant; and 11) some of the Plaintiffs failed to provide any response to an interrogatory seeking an itemization of damages, and no Plaintiff provided a complete response to it.

[7]For example: 1) Plaintiffs argued that their dates of birth were irrelevant to the statute of limitations, as many of them have suffered from a legal disability, thereby tolling any applicable statute of limitations; and 2) Plaintiffs argued that any statute of limitations was tolled by Defendant's concealment of the its ownership of the site. The remainder of Plaintiffs' responses appear to be mere restatements of their objections and/or assertions that they do not have the information requested.

interrogatory responses were neither signed nor verified.[8]

Defendant filed a rebuttal on February 15, 2011 [110]. Therein, Defendant noted that its counsel had sent a letter to Plaintiffs' counsel on January 24, 2011 – ten days after Plaintiffs filed notices of service – notifying counsel that Defendant had not received responses to the requests for production,[9] yet Plaintiffs failed to forward an additional copy. Defendant also attached a copy of an email from its counsel to Plaintiffs' counsel sent on February 8, 2011 [110-1] – the date Plaintiff filed its response to the Motion to Compel – in which Defendant's counsel again requested a copy of the production responses.

Despite the correspondence from Defendant's counsel notifying Plaintiffs' counsel that Defendant's had not received any production responses, Plaintiffs failed to provide the requested documents. Further, Plaintiffs did not attach the purported production responses to their response to the second motion to compel – despite representing to the Court that the responses had been sent.

On February 23, 2011, the Court entered an Order [112] granting in part and denying in part Defendant's Second Motion to Compel. The Court granted the motion as to most

_____

[8]In the cover letters accompanying their purported discovery responses [106-1, 106-2], Plaintiff's counsel acknowledged that they (both the received interrogatory responses and the phantom production responses) were unsigned. Counsel represented that he would have Plaintiffs sign them and forward copies at a later date.

[9]Defendant attached a copy of this letter as an exhibit to its Second Motion to Compel [105-4].

of the interrogatories, specifically noting the evasive nature of some of Plaintiff's responses. For example, when asked to provide an itemized list of medical expenses, some Plaintiffs merely responded that their expenses were ongoing and continued to accrue, but they failed to provide any actual information. The Court specifically noted that some Plaintiffs failed to respond to Defendants' request for an itemized list of damages, while others responded evasively. In summary, the Court largely granted Defendant's Second Motion to Compel as it relates to the interrogatory responses, noting myriad deficiencies in Plaintiffs' purported responses. The Court also ordered Plaintiffs to sign their interrogatory responses and supplementation under oath, as required by Rule 33.

With respect to Plaintiffs' production responses, the Court ordered Plaintiffs to provide Defendants with a copy of the production responses. Regardless of Plaintiffs' representation that the responses had already been mailed, Plaintiffs had been on notice for weeks that Defendant never received them. The Court ordered Plaintiffs to supplement, sign, and serve their interrogatory responses; serve responses to the requests for production; produce documents in response to the requests for production; and otherwise comply with the Court's order by March 9, 2011.

Regarding sanctions, the Court observed that Plaintiff's participation in discovery had been "casual, if not dilatory." The Court noted: 1) Plaintiffs failed to respond to initial discovery; 2) Plaintiffs failed to return Defendant's good faith certificate or otherwise

6

respond to the first motion to compel; and 3) after the Court's first order compelling discovery responses, Plaintiffs refused to provide basic information regarding their claims. Plaintiffs' failure to cooperate in good faith had forced Defendant to incur the cost of filing two motions to compel. Nonetheless, the Court deferred ruling on sanctions pending Plaintiffs' compliance with the second ordering compelling discovery. The Court ordered Plaintiffs to provide the Court with written certification that they had complied on or before March 14, 2011. The Court further ordered Plaintiffs to submit any additional arguments regarding sanctions on that date and permitted Defendant to file any rebuttal on the issue by March 21, 2011.

On March 1, 2011, Defendant filed a motion [115] requesting a status conference and an amendment to the scheduling order. At that time, the scheduling order [77] set Defendant's expert designation deadline as April 15, 2011; the discovery deadline as June 1, 2011; and the dispositive motions deadline as June 15, 2011. Defendant represented that it would be unable to collect and review medical records for all fourteen Plaintiffs; schedule and conduct depositions of the Plaintiffs and their medical providers; schedule and conduct independent medical examinations of the Plaintiffs; and produce finalized expert reports in the time between Plaintiffs' discovery deadline (March 9, 2011) and its designations deadline (April 15, 2011), assuming that Plaintiffs fully complied with the Court's orders. Defendant also represented that it was unlikely discovery could be

completed by June 1, 2011. Accordingly, the Court set a status conference for March 31, 2011, to discuss Defendant's motion for an amended scheduling order [115] and a motion to sever [113] the Plaintiffs' claims.

On March 9, 2011, twelve of the Plaintiffs filed a notice [120] that they had served Defendant with interrogatory responses. On that same day, Keith Culbert, the wrongful death beneficiary and/or successor of Plaintiff Mary Culbert, filed a suggestion of Plaintiff Culbert's death [121] pursuant to Rule 25(a)(1). On March 14, 2011, Plaintiffs' counsel sent a letter to the Court [124-1], advising that he had met with ten of the fourteen Plaintiffs and conducted telephone conferences with two of the remaining Plaintiffs to address the outstanding discovery issues. Counsel represented that several of the Plaintiffs were absent from their homes on a daily basis receiving medical attention, and that several of the Plaintiffs did not have telephone service, further complicating communication with them.

With respect to Defendant's requests for production, Plaintiffs' counsel stated that he had some of Plaintiffs' medical records in his possession and was attempting to acquire complete copies of the medical records. Rather than produce what he had, Plaintiffs' counsel stated that he "would prefer to present the records to the Defendant once all of the records" were in his possession. As for sanctions, Plaintiffs' counsel argued that Plaintiffs had made, and were continuing to make, diligent efforts to comply with the Court's discovery orders. Therefore, Plaintiffs argued that sanctions would be an extreme

punishment, unwarranted under the circumstances.

On March 21, 2011, Defendant filed a rebuttal [124] to Plaintiffs' correspondence of March 14, 2011. Defendant represented that Plaintiffs had not responded to its requests for production or otherwise produced documents, despite having filed a notice of service of responses on January 14, 2011. Defendant further noted that all fourteen Plaintiffs had not supplemented their interrogatory responses, and that the supplements provided were unsigned, unverified, and still contained significant deficiencies. Defendant contended that Plaintiffs once again failed to provide information regarding the medical conditions, illnesses, or injuries allegedly caused by their exposure to gasoline fumes. Likewise, Defendants argued that Plaintiffs failed to provide any information regarding their medical expenses and other components of damages. Finally, Defendants argued that postponing production of *any* documents until Plaintiffs' counsel had obtained *all* responsive documents would necessarily slow Defendant's review process.

The Court[10] held a status conference on March 31, 2011, intending to address Defendant's motion for an amended scheduling order [115] and motion to sever [113] Plaintiffs' claims.[11] At the beginning of the hearing, Defendant briefly stated its positions

---

[10]Both the March 31, 2011, and April 21, 2011, proceedings were held jointly before the undersigned and the Magistrate Judge.

[11]Defendant attached a transcript of the hearing as an exhibit to its Motion to Dismiss [144-2].

regarding the two motions. With regard to the scheduling order, Defendant maintained that it was impossible for it to meet the looming deadlines,[12] in light of Plaintiffs' failure to provide any meaningful information regarding their claims.

Plaintiffs were represented by Mr. Ronald Stutzman, who first appeared in this matter on March 4, 2011 [117], after Plaintiffs had already failed to comply with two discovery orders. Stutzman represented to the Court that Mr. Eduardo Flechas – who had appeared on behalf of Plaintiffs throughout the previous months of inactivity – brought him into the case to facilitate Plaintiffs' participation in discovery. Stutzman further represented to the Court that Plaintiffs' inability to cooperate in discovery stemmed from the following factors: 1) many of the Plaintiffs did not have telephones, and counsel could never be sure whether they would catch them at home during personal visits; 2) eight of the fourteen Plaintiffs have "substantial mental deficiencies," making it difficult to obtain detailed information from them;[13] and 3) Plaintiff Mary Culbert had died on October 15,

---

[12]Under the original scheduling order [77], Defendant's expert designation deadline was April 15, 2011; the discovery deadline was June 1, 2011, and the dispositive motions deadline was June 15, 2011.

[13]Plaintiffs' counsel represented that only one of the eight Plaintiffs displaying "substantial mental deficiencies" had any sort of guardian or conservator. Plaintiff Carl Ellis purportedly lives with his mother, and Plaintiffs' counsel represented that she was able to provide more information than the other allegedly disabled Plaintiffs. Plaintiffs' counsel further represented that, despite their alleged disabilities, these other Plaintiffs were given full charge of their own resources, such as Supplemental Security Income payments.

2010, and Plaintiffs' counsel first learned of her death in March 2011. Stutzman further represented that Plaintiffs would sign HIPAA releases, allowing Defendants to obtain whatever medical records they desired. Finally, Plaintiffs agreed with Defendant that an amendment to the scheduling order was necessary to ensure the proper disposition of the case.

At this point, the Court began to question Plaintiff's counsel in an effort to understand why Plaintiffs had failed to comply with the Court's discovery orders. Throughout the Court's questioning, it became apparent that Mr. Stutzman was unable to provide the Court with any explanation for Plaintiffs' failure to comply with the Court's orders. He represented to the Court that he first began working on the case on February 15, 2011. When the Court asked him how an amendment to the scheduling order would alleviate the alleged difficulties he had mentioned (lack of telephone access, "substantial mental deficiencies"), Mr. Stutzman merely asserted that he needed more time to gather discovery responses. When asked why that hadn't been done during the preceding months, he candidly answered that he had no explanation, as he was not involved in the case at that point. Later in the hearing, Mr. Stutzman admitted that much of Plaintiffs' basic background information was, in fact, available to Plaintiffs' counsel as early as November 2010. He had no explanation for why it was not provided to Defendant at that time.

The Court made several observations throughout the course of the hearing. Plaintiffs

had not yet provided any meaningful response to Defendant's initial discovery requests, which had been served approximately five and a half months before the hearing. At this point, the discovery deadline was only two months away. Beyond initial responses to interrogatories and requests for production, there was still the possibility of independent medical examinations, depositions, and follow-ups to each. Plaintiffs had missed their expert designations deadline on March 1, 2011, and Plaintiffs' counsel admitted that it was impossible for Plaintiffs to prove their case without expert testimony. Finally, the Court observed that Plaintiffs' counsel served discovery responses on behalf of Plaintiff Mary Culbert during the five-month interim between her death and their filing of a suggestion of death. The Court candidly asked how Plaintiffs' counsel could not have known Plaintiff Culbert died if they were actually making effort to participate in discovery. Plaintiffs' counsel had no explanation.

The Court attempted to impress upon Plaintiffs' counsel the gravity of the situation: Plaintiffs had failed to comply with two orders compelling discovery, and upon the Court's scheduling of a status conference to address a possible amendment to the scheduling order, counsel was unable to provide the Court with any explanation for Plaintiffs' failure to abide by the Court's orders or any reason to believe that they would comply if the case moved forward. Further, Plaintiffs' counsel had filed pleadings and served purported discovery responses on behalf of a dead client, and Plaintiffs had missed their expert

designation deadline. The Court specifically advised Plaintiffs' counsel that while it is typically generous with extensions of time for good cause, it is unable to address such issues when parties display indolence of the sort displayed by Plaintiffs in the months preceding the hearing.

The Court decided that any further discussion was futile, as Mr. Stutzman could only provide answers for Plaintiffs' actions during the six weeks prior to the hearing. Further, the Court noted the injustice in sending an associate who had only been working on a case for six weeks to answer for months of non-compliance with Court orders. Accordingly, the Court continued the hearing until April 21, 2011 [126], and specifically ordered all counsel of record, all parties, and any representatives of parties claimed to be deceased or mentally incompetent to attend in person. The Court further ordered Plaintiffs' counsel to bring a copy of Mary Culbert's death certificate to the hearing, and that all of Plaintiffs' files regarding the case were to be available at the courthouse on the day of the hearing. Finally, the Court stayed Defendant's expert designations deadline pending further order.

During the next couple of weeks, Plaintiffs made some progress in complying with their discovery obligations. On April 5, 2011, they filed a motion to extend the expert designation deadlines [127], citing the same difficulties in communication that were alluded to in the Court's March 31, 2011, hearing. On April 14, 2011, Plaintiffs filed a notice

of their intent to serve subpoenas [128] on the Southwest Mississippi Mental Health Complex for any records relating to the treatment of seven of the Plaintiffs.

At 4:56 p.m. on April 20, 2011 – the evening prior to the continued hearing to address Plaintiffs' failure to participate in discovery and potential amendment of the case management order – Plaintiffs filed a Motion for Recusal of the undersigned pursuant to 28 U.S.C. §§ 144 and 455. Therein, Plaintiffs argued that recusal was appropriate because 1) Plaintiffs believed that the undersigned had displayed bias or prejudice against one or more Plaintiffs or their counsel, as evidenced by the Court's rulings in this matter;[14] 2) Plaintiffs believed that the undersigned possessed financial interests which may be affected by this matter's outcome;[15] and 3) Plaintiffs believed that the deceased father of the undersigned was a member of the Board of Trustees of Southwest Mississippi Regional Medical Center, which had a "close relationship" with former Defendant Southwest

---

[14]"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).

[15]While the undersigned receives royalties from certain oil and gas leases, Defendant is not a party to any of those transactions, and Plaintiffs failed to present any evidence that the parties from whom the undersigned receives royalties are connected to Defendant in any manner. Likewise, Plaintiffs failed to present any persuasive argument or evidence that the outcome of a civil action involving one oil company would have any impact on the financial interests of an individual who receives royalties from oil and gas leases with a different oil company.

14

Mississippi Mental Health Foundation.[16]

On the morning of April 21, 2011,[17] the Court received notice of Plaintiffs' last-minute motion for recusal. Accordingly, the Court addressed it before any of the discovery and scheduling issues. In addition to the arguments included in their motion, Plaintiffs asserted that recusal was appropriate because former contributors to the undersigned's past campaign for public office were connected to Chevron Corporation, a corporate entity related to Defendant Texaco.[18] Plaintiffs asserted that they had no reason to look into potential arguments for the undersigned's recusal until the status conference of March 31, 2011, the events of which are recited above.

The Court found that Plaintiffs had failed to file their motion for recusal within ten

_____

[16]The undersigned's father died over twenty years ago and had been retired from the Board of Trustees of Southwest Mississippi Regional Medical Center for at least five years prior to his death. Furthermore, Plaintiffs failed to present any evidence or persuasive argument that Southwest Mississippi Regional Medical Center had any relationship with the Southwest Mississippi Mental Health Complex or Southwest Mississippi Mental Health Foundation beyond mere physical proximity.

[17]Defendant attached a copy of the transcript of the April 21, 2011, hearing to its Motion to Dismiss [144-1].

[18]Notwithstanding Plaintiffs' representation that the campaign contributions were made "over the last several years," the undersigned has not campaigned for public office in almost nine years. The contribution reports [139, 139-1] presented by Plaintiffs are dated October 10, 2000, and October 27, 2000. Furthermore, candidates for Mississippi's judicial offices are insulated from knowledge of their campaign contributor's identities by a campaign committee. Therefore, the undersigned was unaware that the contributors identified by Plaintiffs had made campaign contributions until Plaintiffs asserted as much at the April 21, 2011, hearing.

days of the hearing or demonstrate good cause for said failure, as required by 28 U.S.C. §

144. The Court further found that the affidavit accompanying the motion was insufficient,

insofar as the factual allegations therein were nothing more than rank speculation which

– even if accepted as true – did not provide grounds for recusal. As Plaintiffs failed to file

a "timely and sufficient affidavit" as required by 28 U.S.C. § 144, the undersigned was not

required to assign another judge to hear the proceeding. As Plaintiffs failed to present any

valid grounds for recusal, the Court denied their motion.[19]

The Court then proceeded to address the ongoing discovery issues in the case. To

begin, Defendant represented to the Court that Plaintiffs had failed to produce any further

discovery response since the March 31, 2011, hearing. Defendant stated that while Plaintiff

filed a notice of intent to subpoena records from Southwest Mississippi Mental Health

Complex, Defendant had not yet received any notice that the subpoena was actually

served.

Eleven of the fourteen Plaintiffs were prepared to supply Defendant with verified

and signed interrogatory responses. Plaintiffs' counsel represented that Plaintiff Levander

---

[19]In their motion for recusal, Plaintiffs also referred to 28 U.S.C. § 455, but they offered no argument specific to that statute at the hearing. Section 455 requires that "[a]ny judge . . . of the United States . . . disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). It further requires that a judge recuse himself in certain other situations. 28 U.S.C. § 455(b). For the same reasons already stated, Plaintiffs failed to present any evidence or argument that recusal was required.

Davis was bedridden, and, therefore, they were not able to contact her. Additionally, Plaintiffs' counsel was unable to supply interrogatory responses for Plaintiff Mary Culbert, who was deceased. However, Plaintiffs produced Culbert's death certificate, which the Court admitted into evidence [139-8]. Finally, Plaintiff John Scott had not yet signed his responses, and he was not present at the hearing.

The Court briefly recounted the history of the matter, attempting to elicit an explanation from Plaintiffs' counsel as to why Plaintiffs had failed to comply with the Court's discovery orders. Plaintiffs' counsel admitted that the medical records responsive to Defendant's requests for production should have been produced as part of the pre-discovery disclosures. Nonetheless, Plaintiffs had failed to produce any documents whatsoever to Defendant. Plaintiffs' counsel explained that they were unable to consistently communicate with any of the Plaintiffs because they did not have telephone service and/or could not be reliably located.[20] With respect to Plaintiffs' failure to meet their expert designations deadline, Plaintiffs' counsel represented to the Court that they had missed the deadline because they did not have sufficient funding to pay the expert's fee or sufficient manpower to gather the documents necessary to support the expert's report.

As the hearing proceeded, it became clear that at least some of the supplemental interrogatory responses supplied by Plaintiff that morning were still deficient. For example,

---

[20]Plaintiffs' counsel did not, in the presence of their clients, refer to the aforementioned "substantial mental deficiencies."

17

in response to Defendant's interrogatory regarding components and amounts of damages, Plaintiff Carl Ellis again merely responded that his damages "continue to accrue on a daily basis," with no explanation or specific information. Also, in response to Defendant's interrogatory regarding medical conditions, symptoms, or injuries alleged to have been caused by exposure to gasoline fumes, Plaintiff Ellis merely provided the names of Plaintiffs' purported experts, without enumerating any symptoms or injuries. Plaintiffs' counsel argued that it was inappropriate to expect Plaintiffs to answer an interrogatory regarding causation, a subject to be addressed by Plaintiffs' experts. However, the Court observed that the interrogatory was not necessarily seeking expert testimony on causation. Rather, at a minimum, it sought a list of Plaintiffs' alleged symptoms or injuries.

After hearing counsel's arguments, the Court addressed Plaintiffs directly and briefly related what had occurred in their case. The Court advised Plaintiffs that their counsel had represented to the Court that they were unable to comply with the Court's discovery orders because they were unable to reliably communicate with Plaintiffs. The Court explicitly warned Plaintiffs that they had reached the end of the Court's leniency, and that their case would be dismissed if they did not stay in contact with their attorneys and participate in discovery. To be clear: the Court specifically warned Plaintiffs that it would dismiss their case if they continued to defy the Court's orders. The Court instructed Plaintiffs to provide their counsel with their telephone numbers and addresses or, if

necessary, the telephone numbers and addresses of neighbors or any other party who could reach them on short notice.

The Court ordered Plaintiffs to provide sufficient responses to Defendant's requests for production of documents, and all documents responsive thereto within seven days. The Court held that Plaintiffs had waived all objections to the production requests, except for attorney-client privilege. If Plaintiffs objected to any request for production on the basis of attorney-client privilege, they were required to provide a privilege log. Furthermore, the Court ordered that any Plaintiff who had not served sworn interrogatory responses was required to do so within seven days. The Court assumed that the interrogatory responses that were served that morning were sufficient, but it warned Plaintiffs that if they had not provided the basic information sought therein – information regarding treating doctors, specific damages, specific witnesses, etc. – they had seven days to supplement.

The Court set July 21, 2011, as Plaintiffs' expert designations deadline; September 21, 2011, as Defendants' expert designations deadline; November 21, 2011, as the discovery deadline; December 5, 2011, as the dispositive motions deadline; and May 7, 2012, as the beginning of the case's trial term.

With regard to sanctions, the Court noted the wide range of options available to it under Rule 37. In an act of mercy – rather than justice – the Court imposed the *least* severe of these sanctions, and awarded Defendants the costs and fees they had incurred in filing

19

the motions to compel [91, 105], the motion to amend the scheduling order [115], and the

hearings of March 31, 2011, and April 31, 2011. The Court ordered Defendant to submit an

itemized statement of fees and expenses no later than May 2, 2011, and it ordered Plaintiffs

to file any objections no later than May 9, 2011.   All of the Court's bench rulings regarding

discovery, scheduling, and sanctions were set out in an Order [132] dated April 22, 2011,

and on April 28, 2011, Plaintiffs filed a notice [135] that they had served their responses to

Defendant's requests for production of documents.

On May 2, 2011, Defendant filed its itemization of fees and expenses [137] as ordered

by the Court. However, Plaintiffs did not respond by May 9, 2011. Rather, Plaintiffs sought

leave to file their objections out-of-time [151] on May 31, 2011 – approximately three weeks

after their response deadline had passed. Plaintiffs' counsel represented that he was

unaware that Defendant had filed their itemization of fees and expenses, even though it

was filed on the day it was due under the Court's order of April 22, 2011. On June 1, 2011,

the Court held a telephonic motion hearing on Plaintiffs' request to file out-of-time

objections. At that hearing, Plaintiffs' counsel admitted that he received notices from the

Court's electronic filing system and that there were no technological errors which

prevented him from receiving notice of filings. The only explanation provided by Plaintiffs'

counsel was that his paralegal failed to notify him of the filing while he was out of town.

The Court noted that Plaintiffs' failure to respond reflected a continuing lack of attention

by Plaintiffs' counsel. However, the Court ultimately granted the motion, in light of the size of Defendant's fee request. The Court eventually awarded Defendant $23,617.44 in fees and expenses for its costs in pursuing discovery [156].

Defendant filed its Motion to Dismiss [143] for Plaintiffs' failure to comply with the Court's orders on May 17, 2011, and it is ripe for the Court's review.

## II. DISCUSSION

Rule 37 provides, in pertinent part: "If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders," including "dismissing the action or proceeding in whole or in part." FED. R. CIV. P. 37(b)(2)(A)(v). The Fifth Circuit has held:

> First, dismissal is authorized only when the failure to comply with the court's order results from willfulness or bad faith, and not from the inability to comply. Next, dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Prince v. Poulos*, 876 F.2d 30, 32 (5th Cir. 1989) (quoting *Bluitt v. Arco Chem. Co.*, 777 F.2d 188, 191 (5th Cir. 1985)); *see also United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003).

21

### A.    *Compliance with the Court's Orders*

The first issue is whether Plaintiffs actually failed to comply with a Court order regarding discovery. The factual background of this matter is more than sufficient to demonstrate that Plaintiffs have failed to comply with multiple discovery orders. Without further elaboration, Plaintiffs: 1) failed to comply with the Court's order compelling discovery [93] entered December 20, 2010; 2) failed to comply with the Court's second order compelling discovery [112] entered on February 23, 2011; and 3) failed to comply with the Court's order [132] of April 22, 2011, in which the Court allowed Plaintiffs one last chance to provide full responses to Defendant's discovery requests. The discovery requests in question were propounded on October 13, 2010 – approximately eight months ago – and Plaintiffs have not yet provided sufficient responses.

Plaintiffs argue that they have, in fact, complied with the Court's April 22, 2011, order. They contend that they provided verified interrogatory responses, responses to Defendant's requests for production, multiple releases for each Plaintiff, and approximately seven hundred pages of medical records.

However, it is undisputed that Plaintiffs John Scott, Thelma Sanders, and Mary Culbert did not provide sworn interrogatory responses to Defendant by the April 28, 2011, deadline. Although Plaintiffs' counsel promptly provided Plaintiff Sanders' responses upon the filing of Defendant's motion to dismiss, Plaintiff Sanders nonetheless failed to

comply with the Court's order of April 22, 2011. Regardless, her responses are insufficient, as the Court explains below.

As for Plaintiff Scott, Plaintiffs' counsel represent that they were simply unable to locate him. Therefore, he failed to comply with the Court's order.

Plaintiff Culbert died in October 2010. On May 10, 2011, the Chancery Court of Jefferson County, Mississippi appointed her daughter, Ledrekia Culbert, as administratrix of her estate [148-2]. On May 20, 2011, Plaintiffs filed a motion [148] seeking to substitute Ledrekia Culbert to pursue the claims of Mary Culbert. Plaintiff Culbert's children were present at the April 21, 2011, hearing. Therefore, they were aware of their obligation to respond to Defendant's interrogatories. Furthermore, an administratrix for Plaintiff Culbert's estate was appointed approximately four weeks ago, and there is no reason she could not provide answers to Defendant's interrogatories. Although the Court has not ruled on Plaintiffs' motion to substitute parties, Plaintiffs' counsel had no qualms about filing pleadings on behalf of a dead client for almost five months before they filed a suggestion of death. There is no reason they could not have made a cursory effort to obtain answers to Defendant's interrogatories from the administratrix of Plaintiff Culbert's estate.

With regard to the remaining Plaintiffs, who served responses to Defendant's interrogatories, the Court finds that the responses are insufficient. In the Court's second order compelling discovery responses [112], entered on February 23, 2011, it held:

23

> Plaintiffs are asked about their damages, and they respond evasively. If they claim no damages, they should so state. If they do claim damages, they are to outline the components of what they claim, the sources and dollar amounts, how the damages are calculated, identify the supporting documents and who is making the calculation. Not a single plaintiff attempted to answer the interrogatory completely. . . . All Plaintiffs are ordered to supplement their responses and to answer each subpart.

Now, approximately six months later, Plaintiffs have once again provided evasive, incomplete answers to Defendant's interrogatory concerning damages. Each Plaintiff identified various components of damages, but no Plaintiff identified the amounts of the components, the methods of calculation, the supporting documents, or the persons who made the calculations. Plaintiffs argue that they are unable to provide further information regarding economic damages, as an expert opinion on that subject is necessary. Further, they contend that they can not obtain an expert opinion until they obtain further medical records and medical bills.

In its order of February 23, 2011, the Court clearly outlined the information it expected Plaintiffs to provide in response to Defendant's damages interrogatory. Regardless of their reasons for doing so, Plaintiffs failed to comply with the Court's order. Furthermore, Plaintiffs admit that they have already gathered and produced some medical records. There is no reason they could not attempt to answer the damages interrogatory based on those records and supplement their responses later, if necessary. However, Plaintiffs did not even attempt to answer the question. Rather, they continued to hide the

24

ball on an issue as basic as medical expenses. Accordingly, it is not necessary for the Court to further analyze Plaintiffs' discovery responses. Plaintiffs have now failed to comply with *three* Court orders compelling discovery responses.

**B.      *Willfulness or Bad Faith***

Dismissal under Rule 37(b) "is authorized only when the failure to comply with the court's order results from willfulness or bad faith, and not from the inability to comply." *Prince*, 876 F.2d at 32. When a party indisputably understands what is expected in the way of discovery responses, yet repeatedly fails to comply with the Court's orders, the Court may infer that their non-compliance results from willfulness or bad faith. *See Chisesi v. Auto Club Family Ins. Co.*, 374 F. App'x 475, 477 (5th Cir. 2010) (willfulness was demonstrated by party's "failure to comply with the court's discovery order even after he was personally instructed to do so by the magistrate judge and stated that he understood what was required of him"). A party's willfulness may also be inferred from their repeated failure to comply with the Court's orders despite the Court's specific instructions detailing inadequacies in their discovery responses. *See Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 303 (5th Cir. 2007) (where plaintiff failed to provide sufficient discovery responses after the court provided detailed instructions regarding inadequacies therein, the plaintiff's willfulness was evident); *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998) ("dilatory and obstructive conduct" is demonstrative of bad faith and may merit the ultimate sanction of

25

dismissal or default judgment). In determining whether a party willfully delayed discovery, the Court may "rely on its complete understanding of the parties' motivations." *Smith*, 145 F.3d at 344.

Plaintiffs argue that they have not delayed discovery, asserting that they "have answered every interrogatory presented, executed every release requested and have provided hundreds of pages of medical records in an effort to get discovery in this matter completed." This argument has no merit. Frankly, the Court is astonished by Plaintiffs' audacity in presenting it. A cursory examination of the docket reveals numerous actions and inactions by Plaintiffs which have delayed or obstructed the resolution of this matter. The following represents an non-exhaustive list of Plaintiffs' malfeasances:

- Plaintiffs failed to complete remand-related discovery within the time allowed by the Court.

- Plaintiffs filed a notice of voluntary dismissal as to some Defendants, and then later filed a motion to withdraw their voluntary dismissal.

- Plaintiffs failed to provide sufficient pre-discovery disclosures to Defendant.

- Plaintiffs represented to the Court in the Case Management Conference that they had provided sufficient pre-discovery disclosures, when they had not.

- Plaintiffs failed to respond to Defendant's discovery requests.

- Plaintiffs failed to provide the Court with timely notice that Plaintiff Mary Culbert had died.

26

- Plaintiffs failed to respond to Defendant's first motion to compel.

- Plaintiffs failed to provide discovery responses by the deadline set in the Court's first order compelling discovery, forcing them to seek an extension.

- Plaintiffs provided unsigned, unverified, incomplete responses to Defendant's interrogatories.

- Plaintiffs continued to file pleadings and serve documents on behalf of Plaintiff Mary Culbert, although she had been dead for months.

- In response to Defendant's second Motion to Compel, Plaintiffs represented to the Court they had provided Defendant with responses to the requests for production, but Defendant maintained that it never received any responses. Regardless, there is no dispute that Plaintiffs failed to provide any documents whatsoever after the Court's first order compelling discovery, and, despite being aware that Defendant had not received the responses, Plaintiffs failed to provide Defendant with another copy.

- Plaintiffs failed to provide Defendant with signed, verified, and complete interrogatory responses by the deadline set in the Court's second order compelling discovery.

- Plaintiffs failed to produce any documents to Defendant by the deadline set in the Court's second order compelling discovery.

- Plaintiffs failed to designate their expert witnesses by the deadline set in the Court's original scheduling order.

- The Court scheduled a hearing to address the outstanding discovery issues, and Plaintiffs sent an associate who had only been working on the case for six weeks and was unable to provide the Court with any explanation for Plaintiffs' failure to comply with the Court's orders.

- After the Court continued the hearing, Plaintiffs used their time and resources to pursue a frivolous motion for recusal – rather than to

27

comply with their discovery obligations – which they filed on the eve of the hearing in a blatant attempt to further derail the case.

- After the Court clearly warned Plaintiffs and their counsel that the case would be dismissed if they continued to defy the Court's discovery orders, Plaintiffs again failed to provide Defendant with complete interrogatory responses.

- Plaintiffs failed to file a timely response to Defendant's itemization of expenses and costs, and they later sought leave to file a response out-of-time. When asked why they failed to respond, Plaintiffs had no good reason.

As demonstrated by the above facts, Plaintiffs' "dilatory actions demonstrated by their lengthy delays and their obstructive behavior as exemplified by their evasive and incomplete responses constituted bad faith." *$49,000 Currency*, 330 F.3d at 379.

## C.   *Less Drastic Sanctions*

Rule 37 dismissal "is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions." *Prince*, 876 F.2d at 32. In its first order compelling discovery [93], the Court declined to impose any sanctions on Plaintiffs or their counsel. In its second order compelling discovery [112], the Court deferred ruling on sanctions to see whether Plaintiffs would comply with the Court's orders. After Plaintiffs again failed to comply, the Court imposed monetary sanctions on Plaintiffs' counsel [132, 156]. At the hearing held on April 21, 2011, the Court clearly warned Plaintiffs and their counsel that the case would be dismissed if Plaintiffs continued to defy the Court's discovery orders. Nonetheless, Plaintiffs failed to provide complete

interrogatory responses to Defendant by the deadline imposed by the Court. Accordingly, it is clear that less drastic sanctions have no deterrent effect on Plaintiffs or their counsel.

### D.      *Prejudice*

Plaintiff argues that Defendant's ability to prepare for trial has not been prejudiced insofar as the Court amended the scheduling order to allow more time for discovery and expert witness designations. However, if the Court's ability to continue deadlines mitigated the prejudice to one party caused by an opposing party's discovery violations, no case could ever be dismissed pursuant to Rule 37, as the Court always has the power to control its own docket. Furthermore, Plaintiffs have not given the Court any reason to believe that they will fully comply with the Court's orders from this point forward. Rather, at every turn they have responded to the Court's leniency with excuses, delays, and dissembling.

Regardless of whether Defendant's ability to prepare for trial was prejudiced by Plaintiffs' latest failure to comply with the Court's orders, it is indisputable that Defendants' trial preparation has already been substantially prejudiced. This case was removed over a year and half ago, and Plaintiffs have yet to provide complete interrogatory responses or any expert witness designations. As recently as several weeks ago, Plaintiffs had not served Defendant with responses to its requests for production of documents or any signed or verified responses to its interrogatories. In short, the procedural history of this matter is more than sufficient to show that Defendant has been

prejudiced.

## E.      *Attorneys or Client?*

"Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client." *Id.* at 32. As early as Plaintiffs' response [106] to Defendant's second motion to compel, Plaintiffs' counsel attempted to shift blame to the Plaintiffs themselves for the failure to provide discovery responses, representing to the Court that they were unable to reliably communicate with Plaintiffs because many of the Plaintiffs were "not readily accessible via telephone." At the hearing of March 31, 2011, Plaintiffs' counsel additionally represented to the Court that they were unable to provide discovery responses because Plaintiffs suffered from "substantial mental deficiencies." At the hearing of April 21, 2011, Plaintiffs' counsel once again represented that they were unable to reliably communicate with their clients. Therefore, the record contains evidence indicating that Plaintiffs are at least partially to blame for their failure to comply with the Court's discovery orders.

Regardless, the United States Court of Appeals for Fifth Circuit has stated:

There is no question, however, that a party is bound by the acts of his attorney. "If an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendants."

*Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 (5th Cir. 1995) (quoting *Link v. Wabash R. Co.*,

370 U.S. 626, 632-34, 82 S. Ct. 1386, 1390, 8 L .Ed. 2d 734 (1962)). Plaintiffs' counsel certainly

bears a significant portion of the blame. A minimal amount of effort could have mitigated

whatever communication difficulties existed between them and Plaintiffs. However, the

Court is not required to measure and weigh Plaintiffs' blame against their counsel's.

Regardless of who is at fault, continuing this matter would just waste more of the Court's

resources and unfairly subject Defendant to more litigation expenses.

### III. CONCLUSION

The Court takes no pleasure in sanctioning parties or their counsel, but it is

periodically forced to do so, "not merely to penalize those whose conduct may be deemed

to warrant such a sanction, but to deter those who might be tempted to such conduct in the

absence of such a deterrent." *NHL v. Metro. Hockey Club*, 427 U.S. 639, 643, 96 S. Ct. 2778,

49 L. Ed. 2d 747 (1976). The Court enjoys considerable discretion in this arena, as

"[d]iscovery disputes are, for better or worse, the daily bread of magistrate and district

judges in the age of the disappearing trial," while appellate courts "encounter these issues

rarely and then only from a distance." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 2011 U.S. App.

LEXIS 8969, at *5-*6 (10th Cir. 2011). "Deliberate, repeated refusals to comply with

discovery orders have been held to justify the use of this ultimate sanction." *Bonaventure*

*v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979).

Plaintiffs failed to comply with three Court orders regarding discovery [93, 112, 132],

in addition to various other actions and inactions outlined above which have delayed this matter, consumed Court resources, and unfairly subjected Defendant to considerable expense. "[T]hree strikes is more than enough to allow the . . . court to call a litigant out." *Lee*, 638 F.3d 1318, 2011 U.S. App. LEXIS 8969 at *6. Defendant's Motion to Dismiss [143] is granted, and this matter is dismissed with prejudice.

SO ORDERED AND ADJUDGED this 15th day of June, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE